**GARBARINI FITZGERALD P.C.**
250 Park Avenue
7th Floor
New York, New York 10177
Phone: 212.300.5358
Fax: 888.265.7054
www.garbarinilaw.com

July 24, 2017

**VIA ECF**

Judge J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Burgos et al. v. Uber Technologies, Inc. et al.,* 16-cv-08512 (JPO)
             Motion for Approval of a Fair Labor Standards Act Settlement

Dear Judge Oetken:

      This firm represents Plaintiffs in the above-referenced matter. We write, joined by Defendants Uber Technologies, Inc. and Portier, LLC, to explain why the settlement reached between the parties in this matter is fair and reasonable, and to move this honorable Court for approval of the parties' Settlement Agreement and Mutual General Release (the "Settlement Agreement") attached hereto.

**Procedural History and Relevant Facts**

      This matter was filed on November 1, 2016. (Dkt. No. 1.) In their complaint, Plaintiffs allege they were employed as bicycle messengers in this Judicial District, and were not paid minimum and overtime wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further allege their gratuities were unlawfully withheld by Defendants in violation of both the NYLL, and the written agreements they accepted in order to gain access to and use Uber's software application (the "Uber App"). Plaintiffs also assert derivative claims for notice and record-keeping violations, and spread-of-hours pay, under the NYLL. Plaintiff Walker asserts an individual claim for retaliation under the FLSA and NYLL. (Dkt. No. 16.)

      Defendants strenuously deny Plaintiffs' allegations. Defendants assert that Plaintiffs were properly classified as independent contractors under both the FLSA and the NYLL, and

maintain that Plaintiffs received all gratuities to which they were entitled per the terms of their written agreements.  On January 31, 2017, Defendants moved this Court to compel Plaintiffs to arbitrate their claims on an individual basis.  (Dkt. No. 21.)

After Defendants filed their motion to compel individual arbitration, the parties continued to explore settlement, and Plaintiffs Burgos, Aguilar, and Walker[1] ultimately reached a settlement with Defendants.  As set forth below, the settlement is fair to all parties, and will provide full and complete closure to both sides.

**The Parties' Settlement is Fair and Reasonable**

Parties cannot settle FLSA claims through a stipulated dismissal with prejudice without approval from the district court or the Department of Labor.  *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 200 (2d Cir. 2015). Settlements must be "fair and reasonable" to warrant approval. *Velasquez v. SAFI-G, Inc.,* 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky* v. *Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Sbc*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010).   Here, the parties' settlement meets all five factors.

As an initial matter, unlike the plaintiffs in *Cheeks*, Plaintiffs here were classified as independent contractors, who are exempt from wage and hour laws, such as the FLSA and NYLL.  Defendants maintain that Plaintiffs were properly classified as independent contractors, and Plaintiffs acknowledge that their alleged status as employees is highly debatable.  *See, e.g., Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526 (S.D.N.Y. 2014) (finding drivers in New York City to be independent contractors under the FLSA and NYLL as a matter of law, where

---

[1] Counsel has not been able to contact Plaintiff Fogel in over four months.  If the Court approves the parties' Settlement Agreement, Plaintiff Fogel's claims would be dismissed *without* prejudice.

drivers set their own schedule and were free to determine, among other things, whether, when, and how often they provided services, and were also free to provide services arranged by competitors and/or for their own customers); *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131 (2d Cir. 2017) (affirming decision finding that drivers were independent contractors under the FLSA as a matter of law).

If Plaintiffs were found to be properly classified as independent contractors, they would not be able to recover on *any* of their claims under the FLSA and NYLL, including their claims for unpaid minimum wage and overtime violations, unpaid gratuities, and their derivative claims for notice and record-keeping violations and spread-of-hours-pay.  Further, even if they were able to ultimately prove that they were misclassified, Plaintiffs would still need to prove liability for each of their claims in order to recover damages.

Despite these significant hurdles and risks, each Plaintiff's award under the Settlement Agreement represents a substantial percentage of their total potential "make-whole" recovery on their claims.

- **Plaintiff Burgos** completed deliveries arranged through the Uber App for approximately 30 hours per week, for just over one year.  He will receive $8,815 under the Settlement Agreement.  Plaintiff Burgos estimates his total lost over-time and minimum wages under the FLSA are less than $100.  Nearly all of Plaintiff Burgos' estimated damages stem from allegedly lost gratuities, which can only be roughly estimated.  Given the difficulty of avoiding individual arbitration, the difficulty of proving Plaintiff Burgos was Defendants' employee, and the challenges associated with proving damages, a recovery of $8,815 in this case is extraordinary.

- **Plaintiff Aguilar** completed deliveries arranged through the Uber App on an irregular basis for just three months.  He will receive $4,815 under the Settlement Agreement.   Plaintiff Aguilar estimates his total lost over-time and minimum wages under the FLSA are less than $100.  Nearly all of Plaintiff Aguilar's estimated damages stem from allegedly lost gratuities which, again, can only be estimated.  Given the difficulty of avoiding individual arbitration, the difficulty of proving Plaintiff Aguilar was Defendants' employee, and the challenges associated with proving damages, a recovery of $4,815 in this case is extraordinary.

- **Plaintiff Walker** completed deliveries arranged through the Uber App for almost two years.  He will receive $9,815 under the Settlement Agreement.  Walker estimates he is owed overtime pay for only 6-18 of the weeks in which he used the App.  Like Plaintiffs Burgos and Aguilar, nearly all of Plaintiff Walker's estimated damages stem from allegedly lost

gratuities.[2]     Given the difficulty of avoiding individual arbitration, the difficulty of proving Plaintiff Walker was Defendants' employee, and the challenges associated with proving damages, a recovery of $9,815 in this case is extraordinary.

In addition, the parties will avoid the burden and expense of discovery, motion practice, and continued litigation (whether before this Court or in individual arbitration).

With respect to procedural fairness, the settlement is the result of arm's-length negotiations.  Plaintiffs and Defendants were represented by counsel experienced in wage and hour law during the entire process, and the parties were able to ascertain the risks and benefits of settlement, versus continued litigation of the matter.   Further, there is no evidence of coercion or collusion.

The releases provided for in the Settlement Agreement are also fair and reasonable. Since *Cheeks* was decided, this Court has approved mutual general releases in a number of cases. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) ("Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving agreement containing "mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement [was] signed"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure").

Like in the cases cited above, the parties here have agreed to a *mutual* general release. As such, the Agreement will provide closure to both parties and allow them to "'walk[] away from their relationship … without the potential for any further disputes.'" *Lola*, 2016 WL 922223, at *2 (quoting *Souza*, 2015 WL 7271747, at *5).  Further, a general release is even more appropriate in this case given that Plaintiffs' putative independent contractor status could give rise to several *potential* claims that are typically inapplicable to disputes between employers and

---

[2] Although Plaintiff Walker asserts a claim for retaliation under the FLSA and NYLL, Defendants maintain that his account was placed on hold for fraudulent activity.

employees, including contract / quasi-contract and tort claims, making a broad release necessary. Lastly, Plaintiffs will each receive a substantial amount of compensation above the amounts they assert are owed to them under the FLSA. Accordingly, a general release of claims, which Defendants indicated was a condition of the settlement, is fair and reasonable under the circumstances.

**Adequacy of Fee Award**

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. 2001). When considering fee applications, courts must approach it "with an eye to moderation" because of the belief that counsel bring class and collective actions as a "quest for attorneys'] fees." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53 (2d Cir. 2000).

Reasonableness is the touchstone when determining whether to award attorneys' fees. In *Goldberger v. Integrated Resources, Inc.* the Second Circuit set forth the following six factors to determine the reasonableness of a fee application: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*. at 50.

Unlike the plaintiffs in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54. There was a substantial risk of no recovery if the Court granted Defendants' motion to compel individual arbitration and/or if Plaintiffs' independent contractor status was affirmed. The risk associated with this litigation weighs in favor of granting a contingency fee.

Moreover, there were over 129.8 hours of attorney time expended. *See* Exhibit 1. This equates to $110 per hour of attorney time. Specifically, there was a thirty-four page Complaint which was filed on November 1, 2016 (Dkt. No. 1), a forty-page First Amended Complaint filed on 11/101/2016 (Dkt. No. 7), and a fifty-five page Second Amended complaint filed on December 28, 12/28/2016 (Dkt. No. 17). The complaints required not just a recitation of the facts as presented by the named Plaintiffs, but significant research on bicycle safety laws and statistics. In addition, as stated above, Defendants filed a complex motion to compel individual arbitration on January 31, 2017 (Dkt. No. 21), which Plaintiffs opposed on February 14, 2017. (Dkt. No. 26.) After the motion was fully briefed, and following extensive negotiation, requiring four extensions, a settlement was finally reached.

There was a very low likelihood of recovery, significant time extended, and Plaintiffs' recovery was more than they would have likely received after trial or arbitration. Under these circumstances, the requested attorneys' fees and expenses should, respectfully, be approved by the Court.

                GARBARINI FITZGERALD P.C.

                By: /s/ Richard M. Garbarini
                Richard M. Garbarini

Encl.

cc: Kevin Vozzo, Esq. via ECF.